UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL ADEMILUYI,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 8:16-cv-2597-T-30AEP

NATIONAL BAR ASSOCIATION,
DARYL PARKS and BENJAMIN
CRUMP,

    Defendants.

## **ORDER**

THIS CAUSE comes before the Court upon three motions to dismiss Plaintiff's Second Amended Complaint—one filed by Defendant National Bar Association (Doc. 76), a second filed by Defendant Crump (Doc. 77), and the third filed by Defendant Parks (Doc. 78). In response, Plaintiff filed a Memorandum in Opposition (Doc. 99), as well as a Motion for Leave to File a Proposed Third Amended Complaint (Doc. 98). Defendants, in turn, filed a Response in Opposition to Plaintiff's motion (Doc. 102). Upon review, the Court concludes that the NBA's and Crump's motions should be granted in full, Parks' motion should be granted in part, and Plaintiff's motion should be denied.

## **FACTUAL BACKGROUND**

This action arises out of the alleged drugging and raping of Plaintiff by a third party when she was attending a National Bar Association ("NBA") conference in Tampa during April of 2012. Plaintiff is not suing the alleged rapist but instead the NBA, Daryl Parks

(the NBA president during April of 2012), and Benjamin Crumps (the NBA president when Plaintiff filed this lawsuit). Plaintiff has filed four claims against Defendants—negligence (Count I), gross negligence (Count II), intentional infliction of emotional distress (Count III), and conspiracy (Count IV). Generally speaking, Plaintiff contends that Defendants should face tort liability for her rape because it would not have happened but for their negligence. Plaintiff also contends that Defendants are liable for intentional infliction of emotional distress and conspiracy because they colluded with public officials to destroy evidence of the rape after she sought to have the Hillsborough County State Attorney's Office prosecute the rapist.

In support of her claims, Plaintiff alleges the following facts, which the Court must take as true. Plaintiff joined the NBA in 2011. She subsequently attended the NBA's mid-year conference at the Hyatt Regency in Tampa. The conference lasted from April 19 to 21 of 2012. Each night of the conference, Parks reserved a hospitality suite that was "open . . . with food and alcoholic beverages . . . for [NBA] members and other social invitees to promote [Parks'] efforts as NBA president and counsel to the family of Trayvon Martin."[1] (Doc. 19, ¶ 24.) Parks "invested his own money in the food and alcohol served in [the] hospitality suite." (*Id.* at ¶ 48.)

On one night of the conference, Plaintiff attended "the party in Parks' hotel suite." (*Id.* at ¶ 25.) During the party, another NBA member named David Phillips poured Plaintiff

---

[1] At the time of the conference, Parks and Crump were representing the family of Trayvon Martin in a wrongful death suit. This was unrelated to Parks' position as NBA president.

a glass of wine that was spiked with GHB and insisted that she try it. After ingesting the spiked wine, Plaintiff "appeared to be extremely inebriated [and] unable to walk," and one invitee "was specifically concerned [for] Plaintiff's safety with . . . Phillips." (*Id*. at ¶ 27.) Another NBA member, Herbert Moreira Brown, then escorted Plaintiff to Phillips' hotel room, where Phillips raped her. Plaintiff has no recollection of interacting with Phillips that night because she "blacked out for more than 12 hours," but she woke up "naked in his bed with severe vaginal pain." (*Id*. at ¶ 29.)

According to Plaintiff, "Parks knew [that] Phillips and Brown were regularly drugging and/or raping women at NBA events." (*Id*. at ¶ 34.) However, he did not warn Plaintiff or the other women who attended the conference. In addition, he was reluctant to help Plaintiff when she reported the rape to the Tampa Police Department ("TPD").

As part of its criminal investigation, TPD recorded a phone call between Plaintiff and Phillips on May 2, 2012. During that phone call, Phillips admitted that "sex is most enjoyable for him when he is taking advantage of women . . . who are too inebriated to consent." (*Id*. at ¶ 35.) Even so, TPD closed its investigation and the State Attorney's Office declined to prosecute the case.

Plaintiff later requested a copy of the recording from TPD. TPD first sent her a written transcript and then the recording. The transcript and recording "perfectly matched" each other but "drastically altered the conversation between [Plaintiff] and [Phillips]." (*Id*. at ¶¶ 38-39.) Plaintiff sought to authenticate the recording but was unable to do so because "TPD intentionally destroyed the original audio file." (*Id*. at ¶ 41.)

Plaintiff believes that TPD altered the recording because "Parks, Crump, and the NBA wanted this case deeply buried." (*Id*. at ¶ 37.) Apparently, at the time TPD was conducting its investigation, Parks and Crump were friends with both the Florida Attorney General (i.e., Pam Bondi) and the Hillsborough County State Attorney (i.e., Mark Ober). In addition, between the time that Plaintiff began to push the State Attorney's Office to prosecute the case and the time she received the "altered version of the recording," there was "an usual[ly] high volume of phone communications between all those who stood to gain from the cover up." (*Id*. at ¶ 42.) More specifically, there were conversations between Parks and each of the following individuals: (1) Phillips, (2) Pam Bondi, and (3) former State Senator Arthenia Joyner.

**PROCEDURAL HISTORY**

Plaintiff initially filed this action in September 2015 in the U.S. District Court for the District of Maryland. In September 2016, that court determined that venue was improper, and it transferred the case here to the Middle District of Florida. This Court granted a stay of the proceedings while Plaintiff appealed the transfer order to the Fourth Circuit Court of Appeals. In March 2017, after the Fourth Circuit affirmed the transfer, this Court reopened Plaintiff's case. Defendants subsequently filed their motions to dismiss Plaintiff's Second Amended Complaint.

In their motions, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted. They argue that Plaintiff's negligence and gross negligence claims fail because they owed no duty of care to Plaintiff. In addition, they argue that Plaintiff's intentional infliction of emotional distress and conspiracy claims fail because

4

Plaintiff has not pled sufficient facts in support of those claims. Plaintiff filed a response in opposition, as well as a motion for leave to amend her pleading and a copy of the proposed pleading.

The Court notes that Plaintiff has been on notice of Defendants' arguments since they filed their initial motions to dismiss in October of 2015.[2] She already amended her pleading once in response to Defendants' arguments when she filed the Second Amended Complaint (Doc. 19). The Third Amended Complaint (Doc. 98-1) would be her second attempt to cure the alleged deficiencies in her pleading.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). It must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citation omitted).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows

---

[2] Defendants have made essentially the same arguments for dismissal since October of 2015. Their first set of motions to dismiss (Docs. 9-11, 18) were rendered moot when Plaintiff amended her pleading by filing the Second Amended Complaint. Although Defendants renewed their arguments in a second set of motions to dismiss (Docs. 24 & 25), the District of Maryland did not reach the merits of those arguments because it found that venue was improper. The instant motions are Defendants' third set of motions to dismiss.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Pleadings that offer only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Twombly,* 550 U.S. at 555.

## DISCUSSION

I. **Motions to Dismiss**

   A. **Choice of Law**

When a diversity jurisdiction case is transferred due to improper venue, the transferee court "must apply the choice of law rules of the state in which it sits." *Manley v. Engram*, 755 F.2d 1463, 1466-67 (11th Cir. 1985) (internal citation omitted). The Florida Supreme Court has adopted the "significant relationships" test to determine which state's law should apply. *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). The general principle is as follows: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Id*. Given that the allegedly tortious conduct occurred in Florida, some of the injury from that conduct occurred in Florida, and Defendants Parks and Crump reside in Florida, the Court concludes that Florida state law should apply to Plaintiff's claims. *See id.* (identifying factors to be considered).

   B. **Negligence and Gross Negligence Claims**

Under Florida law, a plaintiff must establish the following elements to prevail on a negligence claim: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant

6

breached that duty; (3) the breach proximately caused an injury to the plaintiff; and (4) the plaintiff sustained damages as a result of the injury. *Clampitt v. D.J. Spencer Sales*, 786 So. 2d 570, 573 (Fla. 2001); *Paterson v. Deeb*, 472 So. 2d 1210, 1214 (Fla. Dist. Ct. App. 1985). To prevail on a gross negligence claim, the plaintiff must establish the same elements but also show that the defendant's conduct "evinced a conscious disregard of an imminent or clear and present danger." *Moradiellos v. Gerelco Traffic Controls, Inc.*, 176 So. 3d 329, 335 (Fla. Dist. Ct. App. 2015), *review denied*, No. SC15-1793, 2016 WL 374040 (Fla. 2016) (internal citation omitted).

Defendants each make the same argument for dismissal of Plaintiff's negligence and gross negligence claims. They argue that they cannot be held liable because they owed no duty of care to Plaintiff.

Whether a duty exists is a question of law. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992). Under Florida law, a duty may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) the general facts of the case. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

"Generally, there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another." *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. Dist. Ct. App. 1999). Relatedly, there is typically no duty "to take precautions to protect another against criminal acts of third parties." *Gross v. Family Servs. Agency, Inc.*, 716 So. 2d 337, 338 (Fla. Dist. Ct. App. 1998). There are, however, exceptions to this general rule. For example, a duty may arise when there is a special relationship between

the defendant and the plaintiff, *Gross*, 716 So. 2d at 338, or if the defendant controls the instrumentality of the harm, the premises upon which the tort is committed, or the tortfeasor, *Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. Dist. Ct. App. 1997) (internal citation omitted). Plaintiff contends that both of these exceptions are applicable, so the Court will address each in turn.

    *i.    Existence of a Special Relationship*

A special relationship is one that is "protective by nature, requiring the defendant to guard his charge against harm from others." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 383 (5th ed. 1984). Special relationships traditionally recognized by the Florida courts include those between employer-employee, landlord-tenant, landowner-invitee, and school-minor student. *Gross*, 716 So. 2d at 338-39 (internal citations omitted).

Of note, the list of recognized special relationships is not static, and Florida courts have been willing to find a special relationship when warranted by the circumstances. For example, in *Gross*, the court found a special relationship between a university and its student such that the student could maintain an action for negligence when the university assigned the student to complete a mandatory internship at a facility where it knew other criminal incidents had occurred. 716 So. 2d at 338-40. And in another case, the court found a special relationship between a Miami car rental agency and a British tourist when the company failed to warn the tourist that there had been repeated instances of criminal activity directed specifically at tourists in rental cars in certain areas of Miami. *Shurben v. Dollar Rent-A-Car*, 676 So. 2d 467, 468 (Fla. Dist. Ct. App. 1996). The *Shurben* court

noted that its holding was appropriate in light of the rental agency's "superior knowledge," i.e., the fact that the agency knew of the criminal danger to the tourist and also knew that the tourist would have no knowledge of the same. *Id.*

Plaintiff argues that there was a special relationship between herself and Defendants because she paid dues to attend an educational event (i.e., the NBA conference), so her relationship to Defendants was similar to that of the university and student in *Gross* or at least the car rental agency and customer in *Shurben*. Plaintiff essentially argues that these cases established the existence of a special relationship whenever someone pays a fee for a service.

The Court does not agree that *Gross* and *Shurben* expanded the special relationship doctrine to cover all business-consumer relationships. Rather, they are best understood with respect to the unique relationships between the parties in those cases—relationships which necessitated that the defendant provide a level of protection to the plaintiff. The Parties in this case did not have a comparable relationship. Defendants did not exert control over Plaintiff in the way that the university did over the student, nor was Plaintiff as vulnerable as an international tourist with no knowledge of local threats. Therefore, there was no special relationship between the Parties.

      *ii.*     *Control of the Instrumentality, Premises, or Tortfeasor*

Even if there is no special relationship, a defendant may still owe a plaintiff a duty of care if the defendant is in actual or constructive control of the instrumentality of the harm, the premises upon which the tort is committed, or the person who committed the tort. *Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. Dist. Ct. App. 1997) (internal citation

omitted). Although Defendants had no control over the instrumentality of the harm (i.e., the GHB) or the tortfeasor (i.e., Phillips), it appears that Parks had control over the premises (i.e., the hotel suite where Plaintiff was drugged). Plaintiff alleged that Parks reserved the hotel suite and personally bought all food and drinks served in the suite; she also repeatedly referred to the suite as "Parks' hotel suite." Viewing these allegations in the light most favorable to Plaintiff, the Court can reasonably infer that Parks was able to exercise some degree of control over the hotel suite (e.g., by deciding whom he invited into the suite and under what conditions he allowed them to stay).[3] Accordingly, Parks owed Plaintiff a duty of care.

### iii. Parks' Duty to Warn

Although the existence of a legal duty is necessary to maintain a negligence claim, it is not sufficient to do so. Plaintiff must also allege facts indicating that Parks breached his duty to her and that his breached caused her injury. Plaintiff theorizes that Parks was negligent because he failed to warn her and other women that they might be drugged and/or raped at the party. (Doc. 19, ¶¶ 34, 43, 47; Doc. 99, pgs. 9-12.)

"An omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, even though such conduct is criminal." *K.M. ex rel. D.M. v. Publix*

---

[3] Parks' argument that he did not have control over the premises because he did not own the Hyatt Regency is unfounded. *See, e.g., Dorsey v. Reider*, 139 So. 3d 860, 865 (Fla. 2014) (defendant bar patron held to have control over portion of the bar's parking lot in which he briefly trapped another patron).

*Super Markets, Inc.*, 895 So. 2d 1114, 1116 (Fla. Dist. Ct. App. 2005) (quoting Restatement (Second) of Torts § 302B (1965)). Thus, Florida courts have consistently held that a defendant's duty to warn against third-party criminal acts is limited by the foreseeability of harm to the plaintiff. *See, e.g., T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 505 (Fla. Dist. Ct. App. 2005) ("duty to protect against the foreseeable criminal acts of third parties . . . by warning tenants about those foreseeable acts"); *Shurben*, 676 So. 2d at 468 ("duty to warn [plaintiff] of foreseeable criminal conduct"); *Gross*, 716 So. 2d at 339 ("The 'special relationship' analysis is necessary in this case only because the injury was caused by the allegedly 'foreseeable' acts of a third party.").

Here, Plaintiff has alleged that Parks knew that Phillips was drugging and/or raping women at NBA events but failed to warn her about this threat, which directly led to her being drugged and raped by Phillips. At this stage in the litigation, these allegations are sufficient to suggest that Parks acted negligently, perhaps grossly so.

    *iv.*    *Vicarious Liability*

Because Parks was the NBA president at the time of Parks' alleged negligence, the Court must consider whether the NBA can be held vicariously liable for his actions. "The general rule is that an employer cannot be held liable for the tortious or criminal acts of an employee, unless they were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. Dist. Ct. App. 1985) (internal citations omitted).

Plaintiff has not sufficiently alleged that Parks' negligent act (i.e., failing to warn her of the threat posed by Phillips) was committed within the scope of his employment. To begin with, Plaintiff alleges that the Parks hosted the party in his hotel suite to promote his own efforts. In addition, Plaintiff's allegation that Parks personally "invested his own money" to buy the food and beverages offered in his suite belies any inference that he hosted the party in his official capacity as NBA president.

In sum, based on the facts alleged, the Court can infer only that Defendant Parks acted negligently. Because Defendants NBA and Crump owed no legal duty to Plaintiff and the NBA cannot be held vicariously liable for Parks' actions, Plaintiff has failed to state a negligence or gross negligence claim against these two Defendants.

### C. Intentional Infliction of Emotional Distress and Conspiracy Claims

Under Florida law, a plaintiff must establish the following elements to prevail on an intentional infliction of emotional distress ("IIED") claim: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous (i.e., it is considered "utterly intolerable in a civilized community"); (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004) (internal citation omitted). For civil conspiracy, a plaintiff must demonstrate: (1) a conspiracy between two or more parties; (2) the conspiracy is to do an unlawful act; (3) the parties did an overt act in pursuance of the conspiracy; and (4) the act(s) resulted in damage to the plaintiff. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) (internal citation omitted).

Here, Plaintiff's IIED and conspiracy claims are premised on the same alleged conduct—that Defendants "conspire[ed] with public officials to alter and destroy evidence of [Phillips'] confession." (Doc. 19, ¶¶ 62, 71.) Both claims fail because Plaintiff has not alleged facts sufficient to infer that Defendants are liable for any misconduct. Plaintiff alleges that TPD altered the recording of Phillips' confession and destroyed the original recording. Yet Plaintiff supplies nothing more than speculation and legal conclusions to connect Defendants to TPD's actions (e.g., statements that "Ober, Parks, Crump, and the NBA wanted [her] case deeply buried . . . thus they conspired and carried out an evil, demented plan to do so"). There are strikingly few factual allegations in support of Plaintiff's IIED and conspiracy claims. The main ones are that Parks and Crump are friends with high-ranking public officials (i.e., Pam Bondi and Mark Ober), and that Parks had communications with Phillips, Bondi, and a state senator during the time period that TPD was investigating her case. These factual allegations are woefully insufficient to maintain an action against Defendants.

## II.     Motion for Leave to Amend

A party may amend its pleading once as a matter of course within 21 days of being served with a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). After that, the party must obtain the opposing party's written consent or the court's leave in order to amend. Fed. R. Civ. P. 15(a)(2). The court should grant a party leave to amend "when justice so requires." *Id*. Reasons to deny this leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party . . . , [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff sought to file her proposed Third Amended Complaint more than 21 days after being served with Defendants' motions to dismiss, so she needs the Court's leave to amend. Plaintiff's proposed amendments serve two primary functions. First, they add defendants and claims to this action. Second, they add factual allegations regarding Plaintiff's existing claims. The Court will address the propriety of the amendments based on their function.

### A. Amendments to Add New Defendants and Claims

Plaintiff seeks to add six defendants to the lawsuit—Pam Bondi, Mark Ober, two officials at TPD, David Phillips, and Herbert Moreira Brown. She wants to amend her IIED and conspiracy claims to include these new defendants, and she also wants to file four additional claims against them (i.e., violations of 42 U.S.C. § 1983, sexual battery and IIED, negligent infliction of emotional distress, and abuse of process).

In its Case Management and Scheduling Order (Doc. 71), the Court indicated that motions to amend a pleading are disfavored. It specifically stated that if a party learns of new evidence that would support a motion to amend, the party should move to amend within 14 days. After the 14-day window, the Court employs a good cause standard to decide whether to allow the amendment.

Here, Plaintiff knew of the existence of these six defendants and their alleged involvement in her case at the time she filed her lawsuit in September of 2015. Indeed, her initial pleading (Doc. 1) describes who each of these individuals is, and it made

substantially the same factual allegations about these individuals as her proposed Third Amended Complaint does now. Plaintiff has demonstrated no good reason for the significant delay in adding these defendants and claims to this action. As such, the Court will not allow the proposed amendments.

## B. Amendments to Add Factual Allegations

Plaintiff's proposed Third Amended Complaint also adds factual allegations regarding her four existing claims against Defendants NBA, Parks, and Crump. In support of her negligence and gross negligence claims, Plaintiff alleges the following:

- Crump "knew or should have known [that] Phillips and Brown were regularly drugging and/or raping women at NBA events . . . [because] [m]ultiple women who have attended NBA events have experienced and been subjected to unlawful sexual conduct from Brown and Phillips and the complaints were brought to the attention of Crump during his tenure as president." (Doc. 98-1, ¶ 39.)

- "Parks and Crump also knew of Parks' former employer, Willie Gary, who is a long time, popular attorney member of the NBA, and the subject of many rape complaints. There was a complaint of Gary participating in the gang rape of a woman at an NBA conference." (*Id*. at ¶ 58.)

These allegations are insufficient to state a negligence or gross negligence claim against the NBA or Crump. They do not support an inference that either Defendant owed a duty of care to Plaintiff, nor do they suggest that the NBA can be held vicariously liable for Parks' alleged negligence.

The factual allegations Plaintiff hopes to add in support of her IIED and conspiracy claims fare no better. Plaintiff's Third Amended Complaint includes a section called "Bribes," in which she inserted allegations suggesting that Pam Bondi has "practice of accepting and/or soliciting campaign donations and other favors from subjects who have an interest in her using her official position to corruptly interfere with their pending civil or criminal cases." (Doc. 98-1, ¶¶ 61-68.) Plaintiff alleges that "[o]n October 17, 2012, . . . Parks bribed Bondi with an urgent $1,000 campaign donation[,] funneled through an intermediary PAC, for her to use her power over the State Attorney's office and TPD to cover up the rape. . ." (*Id.* at ¶ 65.) Plaintiff also provided a weblink to an FEC filing as proof of the bribe—the filing indicates that Parks donated the $1,000 to the Republican Party of Florida.

Plaintiff has not made any new allegations regarding the NBA's or Crump's liability for IIED and conspiracy, and her additional allegations related to Parks do not plausibly suggest any misconduct. Parks' donation to the Republican Party of Florida does not support an inference that he bribed Bondi to cover up Plaintiff's rape, particularly given that Parks made the donation one month before the presidential and congressional elections of 2012. Furthermore, even if the Republican Party of Florida did funnel Parks' donation to Bondi, Plaintiff has not alleged facts to indicate that Bondi had any involvement with the investigation of Plaintiff's rape complaint, or even that she had any interaction with Mark Ober or the TPD detectives assigned to Plaintiff's case during the relevant timeframe.

In short, the factual allegations Plaintiff seeks to add to her pleading do not overcome the deficiencies in her Second Amended Complaint. For this reason, the Court will not allow the proposed amendments.

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991). Here, Plaintiff has already amended her complaint several times, including in response to Defendants' arguments for dismissal. Upon reviewing Defendants' motions to dismiss, Plaintiff sought to cure the alleged deficiencies by filing the Second Amended Complaint and then filing a proposed Third Amended Complaint. Neither addressed the shortcomings in her pleading. The Court will allow Plaintiff one final opportunity to amend, if she wishes. However, any amendment shall be limited to adding factual allegations in support of the claims the Court has dismissed.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant National Bar Association's Motion to Dismiss (Doc. 76) and Defendant Crump's Motion to Dismiss (Doc. 77) are granted in full, Defendant Parks' Motion to Dismiss (Doc. 78) is granted in part, and Plaintiff's Motion for Leave to File a Proposed Third Amended Complaint (Doc. 98) is denied.

2. Counts I through IV against Defendant NBA, Counts I through IV against Defendant Crump, and Counts III and IV against Defendant Parks are

dismissed without prejudice. Plaintiff may proceed with Counts I and II against Defendant Parks.

3. Plaintiff may amend her pleading within fourteen days if she wishes. Any amendment shall be limited to adding factual allegations in support of the claims the Court has dismissed.

**DONE** and **ORDERED** in Tampa, Florida, on July 17th, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record